1  **TIMOTHY R. GARRISON**
   California State Bar No. 228105
2  **WHITNEY Z. BERNSTEIN**
   New York Bar No. 5094206
3  **FEDERAL DEFENDERS OF SAN DIEGO, INC.**
   225 Broadway, Suite 900
4  San Diego, CA 92101-5008
   (619) 234-8467/Fax: (619) 687-2666
5  E-Mail: Timothy_Garrison@fd.org

6  Attorneys for GERARDO AVILA-ARROYO

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

**(HONORABLE BERNARD G. SKOMAL)**

| UNITED STATES OF AMERICA, | Case No. 15CR0708-GPC/ BGS |
|---|---|
| Plaintiff, | DATE: June 3, 2015<br>TIME: 9:30 a.m. |
| v. | |
| GERARDO AVILA-ARROYO, | MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTIONS |
| Defendant. | |

**I.**

**STATEMENT OF FACTS**

To the extent the following statement of facts is based upon materials provided by the government, Mr. Avila reserves the right to take a contrary position at motion hearings and trial. The facts alleged in these motions are subject to amplification and/or modification at the time these motions are heard.

On February 22, 2015, Mr. Avila was arrested by Border Patrol Agent Javier Espinoza for allegedly being in the United States illegally. While in the field, Agent Espinoza obtained statements from Mr. Avila and recorded them in an "Apprehension Report." *See Exhibit A-May 26, 2015 Letter of Matthew Brehm.*

On February 25, 2015, defense counsel sent a letter to the Government requesting preservation of all evidence. The letter stated:

> (1) **The Defendant's Statements** Under FED. R. CRIM. P. 16 (a)(1)(A) and (B), the defendant is entitled to disclosure of all copies of any written or recorded statements made by the defendant, including, but not limited to, any tape recorded jail-house calls which the government intends to use in its case-in-chief, rebuttal and/or for impeachment (thus making such statements relevant); the substance of any statements made by the defendant which the government intends to offer in evidence at trial; any response by the defendant to interrogation; the substance of any oral statements which the government intends to introduce at trial, and any written summaries of the defendant's oral statements contained in the handwritten notes of the government agent; any response to any Miranda warnings which may have been given to the defendant (*see United States v. McElroy*, 697 F.2d 459 (2d Cir. 1982)); and any other statements by the defendant that are discoverable under FED. R. CRIM. P. 16(a)(1)(A) and (B).
>
> (2) **Arrest Reports, Notes and Dispatch Tapes**. The defendant also specifically requests that all arrest reports, notes, and dispatch or any other tapes that relate to the circumstances surrounding arrest or any questioning, be turned over. This request includes, but is not limited to, any rough notes, records, reports, transcripts or other documents in which statements of the defendant or any other discoverable material is contained. This is all discoverable under FED. R. CRIM. P. 16(a)(1)(A) and *Brady v. Maryland*, 373 U.S. 83 (1963). *See also Loux v. United States*, 389 F.2d 911 (9th Cir.), cert. denied, 393 U.S. 869 (1968); *United States v. Johnson*, 525 F.2d 999 (2d Cir. 1975), cert. denied, 424 U.S. 920 (1976); *United States v. Lewis*, 511 F.2d 798 (D.C. Cir. 1975); *United States v. Pilnick*, 267 F. Supp. 791 (S.D.N.Y. 1967). Arrest reports, investigator's notes, memos from arresting officers, dispatch tapes, sworn statements, and prosecution reports pertaining to the defendant are available under FED. R. CRIM. P. 16(a)(1)(B) and (c), FED. R. CRIM. P. 26.2 and 12(H). **Preservation of rough notes is specifically requested, whether or not the government deems them discoverable at this time;**
>
> ...
>
> (4) **Brady Material** The defendant requests all documents, statements, agents' reports, and tangible or other evidence favorable to the defendant on the issue of guilt and/or which affects the credibility of the government's case. Impeachment as well as exculpatory evidence falls within Brady's definition of evidence favorable to the accused. *United States v. Bagley*, 473 U.S. 667 (1985); *United States v. Agurs*, 427 U.S. 97 (1976);
>
> ...
>
> (6) **Request for Preservation of Evidence** The defendant specifically requests that any and all videotapes, dispatch tapes, recordings of interrogations, alleged contraband, or any other physical evidence that may be destroyed, lost, or otherwise put out of the possession, custody, or care of the government and which relate to the arrest or the events leading to the arrest in this case be preserved. This request includes, but is not limited to, any samples used to run any scientific tests and any evidence seized from any third party;

(7) **Tangible Objects** The defendant requests, under FED. R. CRIM. P. 16(a)(1)(E), the opportunity to inspect and copy as well as test, if necessary, all other documents and tangible objects, including any alleged contraband, photographs, books, papers, documents, photographs, buildings, automobiles, or places, or copies, depictions, or portions thereof which are material to the defense or intended for use in the government's case-in-chief, or were obtained from or belong to the defendant;

...

(14) **Jencks Act Material** The defense requests all material to which defendant is entitled pursuant to the Jencks Act, 18 U.S.C. § 3500, and FED. R. CRIM. P. 26.2. The defendant specifically requests pretrial production of these statements so that the court may avoid unnecessary recesses and delays for defense counsel to properly use any Jencks statements and prepare for cross-examination;

*See Exhibit B-February 25, 2015 Letter of Timothy Garrison.*

On April 6, 2015, Mr. Avila filed a motion to compel discovery and preserve evidence. The discovery motion requested all of the above discovery again and the preservation motion requested the preservation of all physical evidence. *See* Docket 14. On May 26, 2015, the defense learned for the first time that the Border Patrol cannot locate the Apprehension Report and that in the past, these reports would be destroyed after formal reports are completed.

These motions follow.

**II.**

**MOTION TO DISMISS INFORMATION DUE TO GOVERNMENT MISCONDUCT**

The government has both a statutory and constitutional obligation to provide Mr. Avila with items material to preparing his defense. *See* U.S. Const., amends. V, VI; Fed. R. Crim. P. 16; *Brady v. Maryland*, 373 U.S. 83, 87 (1963). This includes an obligation to preserve evidence from loss or destruction. *See United States v. Cooper*, 983 F.2d 928 (1993). By intentionally destroying written statements of the arresting officer which documented Mr. Avila's statements, the government seriously violated its statutory and constitutional obligations. The government's misconduct denies Mr. Avila his Fifth

Amendment due process rights, compromises his Sixth Amendment right to effective cross-examination of adverse witnesses and a jury trial, and deprives him of discovery due to him under Rule 16. The remedy for these violations is dismissal of the information.

### A. The Government's Destruction of Material Evidence Violates Mr. Avila's Due Process Rights

When the government loses "potentially useful evidence," the defendant must show that: 1) the evidence was "potentially useful" to the defense, *Arizona v. Youngblood*, 488 U.S. 51, 58 (1988); *California v. Trombetta*, 467 U.S. 479, 489 (1984); *see also Cooper*, 983 F.2d at 931; and 2) that the government disposed of the evidence in bad faith, *id. See also Fisher*, 450 U.S. at 547-48.

#### 1. "Potentially Useful" Evidence

Evidence need not be apparently exculpatory to trigger *Youngblood*. To the contrary, *Youngblood* is triggered where the government destroys evidence that is "potentially useful" to the defense, *Youngblood*, 488 U.S. at 58, or "evidentiary material of which no more can be said than that it could have been subjected to tests, the results of which might have exonerated the defendant." *Id.* at 58. There is no question that the government destroyed potentially useful evidence in this case.

The Apprehension Report that the Border Patrol fills out in the field contains, *inter alia,* information related to location, probable cause, narrative, and a spot for identifying information about people apprehended. *See Exhibit A.* Defense counsel expects BPA Espinoza will testify about many of these things at trial. This report was potentially useful because it could have provided impeachment information for trial. One way it may have been potentially useful would be if the GPS coordinates on the Apprehension Report were different than on the 1-213, showing the defendant was arrested in Mexico.

#### 2. Bad Faith

Although there remains no clear-cut test for discerning bad faith, certain principles emerge from the case law. Relevant to the inquiry is whether the government was aware of the evidence's exculpatory value before its destruction, *Cooper,* 983 F.2d at 931, and the

extent to which the federal prosecutor was involved in the evidence's destruction, *United States v. Loud Hawk*, 628 F.2d 1139, 1152 (9th Cir. 1979 (en banc)). Application of these principles confirms that the government acted in bad faith here.

The government was aware of the evidence's exculpatory value in this case, yet destroyed it anyway. As the Ninth Circuit explained in *Cooper*:

> *Youngblood*'s bad faith requirement dovetails with the first part of the *Trombetta* test: that the exculpatory value of the evidence be apparent before its destruction. The presence or absence of bad faith turns on the government's knowledge of the apparent exculpatory value of the evidence at the time it was lost or destroyed.

*Cooper*, 983 F.2d at 931. Importantly, bad faith need not rise to the level of overt destruction of evidence to gain a tactical advantage or similarly dramatic examples of prosecutorial misconduct. This type of "bad faith" would gut *Youngblood*'s due process protection by making bad faith almost impossible to prove. Instead, the intentional and unreasonable destruction of apparent exculpatory evidence satisfies the bad faith standard.

In *Cooper*, for example, the Ninth Circuit noted the intrinsic link between bad faith and knowledge and charged the government with knowledge of evidence's exculpatory value based on the defense's requests for the evidence and the government's assurances that it was preserving the evidence. *Id.* Affirming the relationship between bad faith and the government's knowledge of exculpatory value, in *United States v. Bohl*, 25 F.3d 904 (10th Cir. 1994), the Tenth Circuit found bad faith and dismissed the indictment where the government destroyed evidence after it was put on notice that the defendants believed the evidence could be exculpatory. *Id.* at 911. The courts' analysis in these cases applies with equal force here.

In *Cooper,* the government destroyed laboratory equipment allegedly used to produce methamphetamine after "[t]he equipment's value as potentially exculpatory evidence was repeatedly suggested to government's agents," and the "government agents stated that they held [the evidence] as evidence" in response to the defense's discovery requests. *Id.* at 931. Based on the exchanges between the defense and the government regarding the evidence, the

Court held that "[t]he equipment's exculpatory value was apparent to government before they, in bad faith, allowed its destruction." *Id.*

In *United States v. Harris,*[1] the Ninth Circuit held that law enforcement must preserve the original notes taken by agents during interviews with prospective witnesses or the accused. *Id.* at 1253. Preservation of these notes is necessary to permit courts to play their proper role in determining what must be produced under *Jencks. Id.* Just as the ordinary citizen is assumed to know the law, so is the government. Here, the Border Patrol has an affirmative policy of destroying interview notes in violation of Ninth Circuit law. When the government violates the law, it acts in bad faith

As in *Cooper*, Mr. Avila repeatedly requested the seized evidence as discovery, indicating his belief that it was potentially exculpatory. *See* Exhibit B; Docket 14. That the government destroyed the evidence despite these requests further confirms that the government destroyed the evidence in bad faith. This is not a case in which Mr. Avila is asking this Court "to impute to the federal government the loss or destruction of evidence by other authorities over whom it has no authority or control." *Loud Hawk*, 628 F.2d at 1149. *See also Bohl*, 25 F.3d at 912 (finding relevant to its bad faith determination that the government had the ability to control the disposition of the evidence when the defendants gave notice that the evidence should be preserved). Here, the government was on notice that defense counsel was requesting information that was within the custody and control of the government and Border Patrol, and only on May 26, 2015 did the government first disclose that an "Apprehension report" written in the field at the time of Mr. Avila's arrest is "unable to [be] locate[d]." *See Exhibit A*.

The government may attempt to cast its actions as "negligent" in an attempt to avoid the result that flows from the misconduct. However, "negligence" cannot describe the sort of affirmative misconduct that occurred here. Tellingly, in neither *Cooper* nor *Bohl* was there any hint that the government had connived to destroy evidence to gain a tactical

---

[1] 543 F.2d 1247 (1976).

advantage. Instead, it was enough that the government stood by and allowed evidence to be destroyed despite its knowledge that the evidence might assist the defense.

*Harris* is not new law. Border Patrol has its own attorneys. The government is presumed to know the law. The fact that this agency developed and implemented a policy to destroy potential evidence in violation of clearly established law shows bad faith.

**B.    The Government's Destruction of Evidence Compromises Mr. Avila's Sixth Amendment Right to Effective Cross-Examination of Witnesses Against Him**

The Sixth Amendment to the United States Constitution guarantees Mr. Avila the right to a jury trial and the right to effectively cross-examine the witnesses against him. U.S. Const. Amend. VI; *see also Crawford v. Washington*, 541 U.S. 36 (2004) (emphasizing the scope and importance of a defendant's right to effectively cross-examine the witnesses against him). Providing the defense with equal access to evidence that tends to impeach a government witness forms an integral component of this right. *Carriger v. Stewart*, 132 F.3d 463, 482 (9th Cir. 1997) (granting a writ of habeas based on government's failure to disclose impeachment evidence defense could have employed against a key government witness and reiterating the long-held principle that, "'if disclosed and used effectively, [impeachment evidence] may make the difference between conviction and acquittal'" (quoting *Bagley*, 473 U.S. at 676)). The nature of the evidence destroyed in this case compromises Mr. Avila's ability to exercise his Sixth Amendment rights.

The government's destruction of the notes of the field interview seriously prejudices Mr. Avila's case. First of all, the government will most likely use circumstantial evidence to attempt to prove that Mr. Avila entered the United States at a time or place other than as designated by immigration officers. BPA Espinoza must testify for it to do this. Agent Espinoza's testimony is central to the government case. At this point, it is unknown what exactly Agent Espinoza will testify to. Of course, there is the I-213 report, but experience shows that testimony can differ from what is in a police report. The Apprehension Report may have provided a basis to impeach Agent Espinoza.

In sum, the government destroyed evidence that would have allowed Mr. Avila to impeach or throw into doubt the testimony of key government's witnesses testifying regarding central issues; to advance his theory of defense through cross-examination; and to put on evidence in his own defense. This compromises Mr. Avila's ability to effectively cross-examine the witnesses against them and defend himself to a jury, effectively denying him his Sixth Amendment rights.

**C.  The Government's Destruction of Evidence Violates Rule 16**

The government's destruction of discoverable evidence violates the government's discovery obligations under Rule 16. Among other things, Rule 16 provides:

(A) Defendant's Oral Statement. Upon a defendant's request, the government must disclose to the defendant the substance of any relevant oral statement made by the defendant, before or after arrest, in response to interrogation by a person the defendant knew was a government agent if the government intends to use the statement at trial.

(B) Defendant's Written or Recorded Statement. Upon a defendant's request, the government must disclose to the defendant, and make available for inspection, copying, or photographing, all of the following:

> (i) any relevant written or recorded statement by the defendant if:
> 
> • the statement is within the government's possession, custody, or control; and
> 
> • the attorney for the government knows--or through due diligence could know--that the statement exists;
> 
> (ii) the portion of any written record containing the substance of any relevant oral statement made before or after arrest if the defendant made the statement in response to interrogation by a person the defendant knew was a government agent; and
> 
> (iii) the defendant's recorded testimony before a grand jury relating to the charged offense.
> 
> ...

(E) Documents and Objects. Upon a defendant's request, the government must permit the defendant to inspect and to copy or photograph books, papers, documents, data, photographs, tangible objects, buildings or places, or copies of portions of any of these items, if the item is within the government's possession, custody, or control and:

(i) the item is material to preparing the defense;

(ii) the government intends to use the item in its case-in-chief at trial; or

(iii) the item was obtained from or belongs to defendant.

Fed. R. Crim. P. 16. Rule 16 also states

As explained above, the evidence the government destroyed were recorded statements of Mr. Avila and the other information on the Apprehension Report is material to Mr. Avila's defense, because it was the prior written statement of a central government witness.

**D.    The Remedy is Dismissal of the Indictment**

Due to the extent of the government's destruction of material evidence in this case, the only just remedy is dismissal of the indictment. *See, e.g., Cooper*, 983 F.2d 928 (affirming dismissal of indictment for destruction of evidence); Bohl, 25 F.3d 904 (dismissing indictment for destruction of evidence); *United States v. Pollack*, 417 F. Supp. 1332 (D. Mass. 1976) (same).

Ninth Circuit precedent supports dismissal of the indictment in this case. *Cooper*, 983 F.2d 928, is on point. In that case, the government destroyed laboratory equipment that may have exculpated a defendant despite the defendant's request for preservation. *Id.* The government argued that a stipulation, a jury instruction, or suppression of the evidence were appropriate remedies. *Id.* at 932-33. However, the Ninth Circuit disagreed, stating: "[The defendants] should not be made to suffer because government agents discounted their version and, in bad faith, allowed its proof, or its disproof, to be buried in a toxic waste dump." The same reasoning applies here. Mr. Avila should not be made to suffer because the government destroyed the evidence. *Cf. United States v. Riley*, 189 F.3d 802 (9th Cir. 1999) (reversing narcotics conviction where agent intentionally, but in good faith, destroyed notes of interview with confidential information in violation of Jencks Act).

The Tenth Circuit's decision in *Bohl*, 25 F.3d 904, is also instructive. In that case, the government accused the defendants of fraud in connection with government contracts to build radar and radio transmission towers. *Id.* Despite defense requests for preservation of the evidence, the government destroyed the towers after having its own expert examine them, thus leaving the defense with no means of challenging the government's assertion that the towers did not meet the specifications of the contract. Like the court in *Cooper*, the *Bohl* court focused on prejudice to the defendants in deciding that dismissal of the indictment was the appropriate remedy, noting that, unlike evidence that was merely undisclosed, "the disposition of evidence that is central to the case may permanently deprive the defendant of due process." *Id.* at 914. Precisely the same sort of prejudice has occurred here.

At this juncture, there is no remedy besides dismissal that will mitigate the prejudice Mr. Avila has suffered by being unable to investigate and examine the physical evidence that the government created and then willfully destroyed. Thus, like the courts in *Cooper* and *Bohl*, this Court has "no choice but to . . . dismiss the indictment." *Id.*

**E. In the Alternative, The Court Should Preclude BPA Espinoza from Testifying Under the *Jencks* Act.**

The only appropriate remedy in this case is dismissal of the superseding information. However, in the alternative, Mr. Avila suggests that this Court should at least preclude BPA Espinoza from testifying.

In *Harris*, the Ninth Circuit addressed "the propriety of the long-standing administrative practice of the [FBI] of routinely destroying rough interview notes taken by agents in the course of a criminal investigation after the information contained in the notes is incorporated in a more formal interview report." *Harris*, 543 F.2d at 1247-48. The Ninth Circuit held that this "good-faith destruction," even "in accordance with normal agency procedure," was simply unjustifiable and "amount[ed] to a usurpation of the judicial function of determining what evidence must be produced in a criminal case." *Id* at 1248.

The issue before this Court now is the same as the one the *Harris* Court conclusively decided 39 years ago. And similarly, here, the government's destruction of Agent Espinoza's Apprehension Report is improper, in violation of controlling case law, and cannot be justified by alleging that the contents of the Apprehension Report were incorporated into a more formal document (namely the I-213) which the government has provided in discovery. This is especially so given that it was recently discovered in this District, mid-trial in *United States v. Portillo-Lazo*, 14-CR-1741-MMA, that all information obtained in the field report was <u>not</u> incorporated into the formal I-213, despite the government's representation and despite its agent's testimony that the forms contained identical information.

The Jencks Act "requires the government to produce any previously-made statement of the witness in its possession insofar as it relates to the testimony at trial." *Harris*, 543 F.2d at 1249. Handwritten or rough interview notes taken by a government agent during a criminal investigation constitute producible Jencks Act statements if the agent testifies at trial. *Id.*; *see also Unites States v. Johnson,* 521 F.2d 1318, 1319 (9th Cir. 1975); *United States v. McSweaney*, 507 F.2d 298 (9th Cir. 1974). To ensure meaningful confrontation of the government witnesses, upon the defendant's motion, the Court must order the government to produce any statement of the witness in the government's possession relating to the subject matter about which the witness testified. *See* 18 U.S.C. § 3500(b); *see also* Fed. R. Crim. P. 26.2.

If the government fails to produce such statements required under the Jencks Act, this Court should strike the testimony of the witness from the record. *See* 18 U.S.C. § 3500(d). For example, in *United States v. Johnson*, the Ninth Circuit vacated the trial court's judgment and remanded for a hearing on the Jencks Act question where the government was not required to turn over the handwritten notes of the arrest and interview of the defendant. *Johnson*, 521 F.2d 1318, 1319 (9th Cir. 1975). In *Harris*, the Court found that the trial judge's refusal to strike the testimony of the agent whose notes were not produced was harmless because the defendant did not claim that the agent's testimony was incomplete or

inaccurate, and because the agent's testimony was actually favorable to the defendant. *Harris*, 543 F.2d at 1253. Unlike in *Harris*, Mr. Avila here contends that he cannot evaluate whether Agent Espinoza's proffered testimony is accurate and complete without the requested and now-missing Apprehension Report.

Here, the government is unable to produce the Apprehension Report filled out in the field by BPA Espinoza contemporaneous to his arrest of Mr. Avila. *See Exhibit A*. The government says that any information that was in the now-missing Apprehension Report would have been contained in the I-213. *Id*. There are two fatal problems to the government's argument. First, it is irrelevant that the government claims the contents of the now-missing document is otherwise incorporated into the I-213. As the *Johnson* Court held, "[a] further inquiry is appropriate and the notes producible even where it affirmatively appears that the entire contents of the notes are included in a document which was turned over to the defense." *Johnson*, 521 F.2d at 1320 (citing *Ogden v. United States*, 303 F.2d 724, 736-37 (9th Cir. 1962)).

Second, the government's blind assertion that the information contained in the Apprehension Report is contained in the I-213 cannot be taken on its face. The government recently made the same assertions that the information contained in the unavailable Field Intel Report was identical to that in the I-213 in this District in *United States v. Juan Antonio Portillo-Lazo*, 14-CR-1714-MMA. There, defense counsel requested production of the Field Intel Report about which the agent testified. The government attorney replied:

> We thoroughly asked Agent Kennerson about these questions regarding this field interview pursuant to Border Patrol policy. He's happy to come in her [sic] and testify to it. They destroy those forms after it has been memorialized on the I 213 so essentially those questions are the same question on the I 213 which has been produced to defense counsel.

*See Exhibit C-Portillo-Lazo Trial Transcript*, May 13, 2015, Day One of Trial Afternoon Session, Reporter's Partial Transcript of Proceedings, at Page 66, Line 21 – Page 67, Line 2. The agent also testified under oath that the contents of the two forms were the same. *Id*. at Page 57, Line 22 – Page 58, Line 4. On its redirect examination, the government even asked Agent Kennerson, "To your knowledge, was everything on your Field Intel

memorialized in your I 213?" and Agent Kennerson replied, "Yes." *Id*. at Page 113, Line 24 – Page 114, Line 1.

However, mid-trial, upon discovering the previously unavailable Field Intel Report, the government dismissed the case and indicated that the Field Intel Report contained notations of the defendant's fear of being returned to Mexico while the I-213 in that case had no mention of fear whatsoever.

Through counsel, Mr. Avila requested the Field Intel Report from that case to show this Court that even though the government says all the information in the Apprehension Report goes into the I-213, that assertion was recently shown to be wrong. The government declined to produce the Field Intel Report.

In dealing with this issue, the Ninth Circuit has recognized that "[t]he question of whether an otherwise producible statement is useful for impeachment must be left to the defendant. Certainly the answer should not rest with the very witness whose testimony the defendant seeks to impeach." *Johnson*, 521 F.2d at 1320 (internal citations omitted). The recent discrepancies in *Portillo-Lazo* epitomize this point.

Here, the most troubling issue is that this Court cannot play its proper role in determining what evidence must be produced by the Jencks Act or other applicable law because the government cannot produce the Apprehension Report filled out for BPA Espinoza in this case. *See Harris*, 543 F.2d at 1253. The unavailability of Agent Espinoza's contemporaneous notes forecloses any inquiry into possible discrepancies between his original impression and the more studied narrative in the I-213. This also limits Mr. Avila's constitutional right to cross examine and confront the agent. Defense counsel timely and repeatedly requested production and preservation of this evidence. The government's failure to preserve and produce this evidence is a failure to comply with its obligations under the Jencks Act and Federal Rule of Criminal Procedure 26.2. This failure on the government's part requires preclusion of its proffered testimony. When the government announces, pre-trial, its intent to call a witness and its intent to not disclose discoverable Jencks Act statements, as the government did here in its May 26, 2015 letter, the witness's testimony

should be precluded. The appropriate remedy is dismissal of the information, but alternatively, this Court must preclude Agent Espinoza's testimony under the Jencks Act.

### III.
### CONCLUSION

For the foregoing reasons, Mr. Avila respectfully moves this Court to grant his motion to dismiss the information.

Respectfully submitted,

DATED: May 28, 2015

*s/ Timothy R. Garrison*
**TIMOTHY R. GARRISON**
Federal Defenders of San Diego, Inc.
Attorneys for Mr. Avila
timothy_garrison@fd.org

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

**(HONORABLE BERNARD G. SKOMAL)**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Case No. 15CR0708-GPC/ BGS |
| Plaintiff, | ) | |
| v. | ) | |
| GERARDO AVILA-ARROYO, | ) | PROOF OF SERVICE |
| Defendant. | ) | |
| _____ | ) | |

I HEREBY CERTIFY that I am a United States citizen, over the age of 18 years and not a party to this action. On 5/28/2015, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. Unless otherwise noted below, I also certify that the foregoing document is being served this day via transmission of Notices of Electronic Filing generated by CM/ECF on the following parties:

**Matthew Brehm**
Matthew.Brehm@usdoj.gov,Efile.dkt.gc1@usdoj.gov

**Michelle L. Maisto**
Michelle.Maisto@usdoj.gov,Efile.dkt.gc1@usdoj.gov,janice.griffin@usdoj.gov

Date: 5/28/2015  *s/Timothy R. Garrison*
**TIMOTHY R. GARRISON**

15  15CR0708-GPC